243 A.2d 754.

EDWARD PELOQUIN *vs.* ITT GENERAL CONTROLS, INC.,
HAMMEL-DAHL FOSTER DIVISION.

JUNE 28, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an employee's appeal from a final decree of the workmen's compensation commission.

On July 1, 1964, petitioner sustained an injury in the course of lifting a heavy steel bin, which lifting was within the duties for which he had been engaged by respondent employer. The petitioner was first examined by Dr. E. Wade Bishop on the evening of July 1—the day of the accident—and again on July 2 and 6.

Doctor Bishop diagnosed the injury as a left inguinal hernia and recommended surgery, but petitioner was not receptive; so on July 6, 1964, Dr. Bishop had him fitted to a truss. It was the doctor's opinion that petitioner could then return to his regular employment. It would appear, however, that petitioner did not return to work at once but on July 21, 1964, consulted Dr. G. Leonard Sandberg, a qualified practicing chiropractor, to whom petitioner complained of a low back injury. He made no such claim to Dr. Bishop. Doctor Sandberg began a series of treatments for a back condition not related to the hernia.

On August 5, 1964, petitioner returned to respondent's employment but not to his regular work. This change of job, petitioner testified, came about because of reduced production. The new work was apparently less remunerative than petitioner's regular job, but petitioner conceded that he at no time requested transfer back to his old job.

By an employee's original petition dated October 31, 1964, petitioner applied for compensation benefits for total incapacity from July 2, 1964, to August 5, 1964, and for partial incapacity thereafter, as well as for medical expenses and permission for major surgery. The petition stated the nature of his injury to be "Strangulated hernia and lower back." At this time petitioner was represented by counsel who, December 18, 1964, was granted permission to withdraw on the ground that counsel felt it was impossible to accomplish all that petitioner expected. Hearing was continued to February 12, 1965, to give petitioner time in which to engage new counsel. At that hearing, petitioner was represented by another attorney, who in turn was replaced by a third attorney after the decision of the single commissioner. In this regard, it may be noted that petitioner has been represented by at least six different attorneys.

At the hearing held February 12, 1965, on the original petition, testimony was received from petitioner, Dr. Bishop and Dr. Sandberg. Also received in evidence was a report

from Dr. Paul J. Rozzero who examined petitioner on July 30, 1964, at respondent's request. The significant testimony of petitioner and Dr. Bishop has been heretofore related. Additionally, Dr. Rozzero's report makes no mention of a lower back injury, either discovered by the doctor or complained of by petitioner. The report does establish the existence of a left inguinal hernia probably resulting from petitioner's work on July 1, 1964; recommends surgery for repair of the hernia; notes petitioner as not receptive to surgery; and concludes with a finding of no reason why petitioner is not working since wearing of truss makes this possible. In any event, at the conclusion of the February 12, 1965 hearing the single commissioner found that the hernia was work related; that petitioner was totally incapacitated from July 2 through July 6, 1964; was able to return to his regular work on July 7; and that a low back injury had not been proved. Accordingly, a decree was entered March 4, 1965, awarding total compensation for the fourth and fifth days of incapacity, medical expenses incurred, costs including a counsel fee, and granting permission for major surgery. From this decree petitioner seasonably appealed to the full commission which on June 8, 1965, entered its decree affirming the decree of the single commissioner.

After the time for appealing therefrom had passed, petitioner, acting pro se, began a series of communications with the clerk of this court and the chairman of the workmen's compensation commission. He was informed by the clerk of this court that the cause remained with the workmen's compensation commission, no appeal having been taken. The workmen's compensation commission repeatedly advised him as to the status of his cause, conferred with him, and recommended that he again engage counsel. The record suggests that some attorneys consulted attempted to persuade petitioner that the issue of a low back injury was res adjudicata and they were therefore not retained.

Thereafter, petitioner came under the care of Dr. Allan A. DiSimone on February 15, 1966, and entered the hospital two days later. Doctor DiSimone performed corrective surgery for the hernia February 18, 1966, and so advised respondent employer. The repair was successful but petitioner's convalescence continued for several months. Doctor DiSimone pronounced him fit to return to work May 18, 1966, and submitted a bill for his services in the amount of $190. The hospital bill came to $302.32. Informed of this, respondent's carrier sent petitioner a preliminary agreement which contemplated payment of compensation for total incapacity from February 17, 1966, through May 17, 1966, as well as hospital and medical expenses incurred in connection with the February 18 surgery. This agreement conformed to the benefits flowing from the findings contained in the single commissioner's decree of March 4, 1965, and affirmed by the decree of the full commission from which no appeal had been taken. The petitioner before signing and returning this agreement altered it to include a lower back injury and claims resulting therefrom. The respondent employer declining to assume these responsibilities, appellant resumed communication with the workmen's compensation commission. Under date of November 25, 1966, he wrote to the commission, labeling his communication as an appeal, and making divers and sundry claims. By letter dated November 30, 1966, the commission acknowledged receipt of this communication and advised petitioner that it would be treated as an employee's petition for review. Further, petitioner was informed that a hearing would be held thereon January 11, 1967, at which time he should be present, together with Dr. DiSimone, a representative of Our Lady of Fatima Hospital and such other witnesses as he might wish to present. To insure their presence, the commission wrote to Dr. DiSimone and the credit department of Our Lady of Fatima Hospital, advising them of the January 11, 1967 hearing and its rele-

vance to them. It would appear that the commission also notified respondent's counsel of record.

At the January 11, 1967 hearing, petitioner was represented by his fourth attorney of record. Counsel of record for respondent employer was also present, but asked permission to withdraw on the ground that the commission was without jurisdiction to entertain an employee's petition to review the June 8, 1965 final decree.[1] He stated that he was present out of respect for the commission, but had entered no appearance. At the request of the single commissioner, however, he remained and participated in the hearing.

In the course of the January 11, 1967 hearing, Dr. DiSimone's bill and that of Our Lady of Fatima Hospital were received in evidence, as were petitioner's testimony and exhibits offered by him. They included a bill for an airfoam mattress for back support in the amount of $113.36; a bill for professional services rendered by Dr. Sandberg in connection with petitioner's complaint of a lower back injury; and copies of voluminous correspondence from petitioner to his doctors, employer's carrier, lawyers and the workmen's compensation commission.

The petitioner's testimony related almost exclusively to claims for partial incapacity, medical expenses and costs amounting in the aggregate to several thousand dollars, none of which was proven, and all but one of which were

---

[1]Since petitioner's pro se designated "appeal" asserted claims for benefits which could be awarded only on a finding of a work-connected lower back injury which the unacceptable final decree of June 8, 1965, had adjudicated adversely to petitioner, counsel for respondent was taking the position that the hearing was unauthorized. It is clear, however, that the commission ordered the hearing by articulating petitioner's "appeal" as an employee's petition for review on the ground that his incapacity had "increased or returned" as authorized by G. L. 1956, §28-35-45.

So regarded, however, respondent took the position that no hearing was in order since it had offered and stood ready to make all payments due by reason of the February 18, 1966 surgery.

attributable to his complaint of a lower back injury. On January 27, 1967, the single commissioner rendered a written decision in which he reviewed the travel of petitioner's cause, evaluated the evidence adduced at the January 11 hearing, and found as facts that petitioner was totally incapacitated from February 17 to May 17, 1966, as a result of the left inguinal hernia, and that Dr. DiSimone's medical services, as well as Our Lady of Fatima Hospital services, were reasonable and necessary to cure, rehabilitate or relieve petitioner from the effects of the hernia injury. Additionally, he held that petitioner's claim of a lower back injury, having been previously disallowed, was res adjudicata and that a counsel fee could not be ordered since petitioner had not successfully prosecuted the petition in the nature of review. On February 2, 1967, a decree was entered conformable to the decision.

From that decree petitioner seasonably claimed an appeal. In this he acted pro se filing unorthdox reasons of appeal, and the commission extended the time for filing together with the transcript from March 20, 1967 to April 25, 1967. Still acting pro se, petitioner complied April 21, 1967, by filing a document which set forth as a reason of appeal "The decree's is against the law of evidence." In the same document petitioner again asserted a lower back injury resulting from the July 1, 1964 trauma, claiming $3,700 in compensation benefits and costs therefor and complaining that neither respondent employer nor its carrier had made "complete payment."

By letter dated May 29, 1967, the commission notified petitioner that his appeal would be heard June 15, 1967, and strongly urged that he engage the services of counsel. On June 15, 1967, petitioner's fifth counsel entered his appearance and the hearing was continued to September. In August, petitioner's latest counsel withdrew, and on September 8, 1967, petitioner's sixth and present counsel of record entered his appearance. He filed amended reasons

of appeal together with a memorandum ordered by the commission. These amended reasons, although proper in form, also sought to disturb the finding contained in the single commissioner's decree of March 4, 1965, affirmed by the full commission's unappealed decree of June 8, 1965, that petitioner had failed to prove a work-connected lower back injury.

The commission held a hearing on the amended reasons of appeal October 19, 1967, and on October 31, 1967, entered a decree affirming the decree of the single commissioner. The commission's decree conformed to its decision in which all of petitioner's amended reasons of appeal and contentions relating thereto were carefully considered, fully discussed and correctly rejected.

Appealing from that decree to this court, petitioner's counsel filed thirteen reasons of appeal, but has compressed them into three contentions. The first such is that the commission erred in rejecting petitioner's uncontradicted testimony that he was forced to return to lighter work at lower pay. In support thereof counsel refers our attention to the statement contained in the full commission's decision that if petitioner on returning to work after the July 1, 1964 trauma had earned lower wages, " * * * it was not in any way due to the effects of his left inguinal hernia, but due to other reasons * * *." This finding of "other reasons" counsel argues, is contrary to petitioner's uncontradicted testimony.

In this, petitioner is mistaken. It was his uncontradicted testimony that when he returned to work there had been some lay-offs for economic reasons and he had been assigned a different job from which, when business improved, he freely admitted that he had requested no transfer to his ordinary work.

It is petitioner's second contention that the commission erred in not awarding counsel and witness fees. He argues that although under G. L. 1956, §28-35-32, as amended,

recovery of such counsel and witness fees is contingent on an employee's successful prosecution of his petition, petitioner here was successful within the meaning of the cited section, even though he was not awarded all the benefits that he sought. The commission denied such costs because it found that petitioner had been awarded only that which respondent employer had offered to pay without the necessity of prosecuting his petition in the nature of an employee's petition for review.

The commission erred in this, petitioner argues, in that at the time of the January 11, 1967 hearing, respondent employer had not paid Dr. DiSimone nor Our Lady of Fatima Hospital. Neither, he points out, had petitioner been paid compensation for the period February 17 to May 17, 1966. Thus, although these were benefits to which petitioner was clearly entitled, the petition and resulting hearing were made necessary by respondent employer's lack of good faith.

There is no merit in this contention. General Laws 1956, §28-35-9, provides:

> "In the event that an employer or insurer makes payment of compensation to an employee without executing a memorandum of agreement such payment shall constitute an admission that the employee is entitled to compensation under the provisions of chapters 29 to 38, inclusive, of this title and such employer or insurer shall not be entitled to any credit for such payment if the employee is awarded compensation in accordance with the provisions of said chapters."

Had respondent employer paid such benefits as were subsequently awarded without the execution of an agreement, it might well have been twice liable and an employer is not to be faulted for insisting on the protection that an agreement would secure. Cognizant of potential double liability, yet ready to meet their obligations, petitioner's employer and carrier forwarded a preliminary agreement to petitioner, the execution of which would have secured him all

the benefits subsequently awarded without the necessity of the January 11, 1967 hearing. It was petitioner who rendered the preliminary agreement nugatory by altering it so as to make employer and carrier responsible for benefits for which they were not responsible under the unappealed final decree of June 8, 1965. It is understandable that they refused to execute the agreement as thus altered.

Furthermore, addressing himself to the merits of the hearing as they related to the benefits subsequently awarded, counsel of record for the employer and carrier renewed the offer contained in the preliminary agreement. It is argued by petitioner that, having entered no appearance, counsel's offer was not valid. In this, petitioner misconceives the nature of counsel's position. It is clear that he was pursuing a consistent course as to the lack of the commission's jurisdiction to review the unappealed June 8, 1965 decree. Such a review would have been in order only on a petition filed within six months of the June 8 decree, G. L. 1956, §28-35-61, as amended, and *Luzzi* v. *Imondi*, 97 R. I. 463, 198 A.2d 671. The instant articulated petition was not filed until 17 months thereafter, namely, November 25, 1966. As to the limited purposes for which the hearing was held, counsel's participation at the request of the single commissioner was as counsel of record.

We conclude then that the commission was correct in holding that petitioner had not successfully prosecuted his petition so as to entitle him to counsel and witness fees within the intendment of §28-35-32, as amended.

It is petitioner's final contention that the commission clearly erred in failing to award medical expenses as to medication for the hernia and the cost of the special mattress. As to this latter item, petitioner relies on one of his exhibits, namely, a written statement by Dr. DiSimone that he had recommended such a mattress " * * * for extra firm support for his low back injury." Doctor DiSimone's state-

ment disposes of petitioner's contention that the mattress was prescribed to relieve the inguinal hernia.

The second item was some unestablished medication to be applied around the hernia area which the petitioner testified was purchased by him at a cost of $8.93. On its face, this may well have been a necessary medical expense for which the respondent employer could have been proven responsible, but there was no competent proof. There was only the petitioner's testimony that he purchased such medication and, within the rule enunciated by this court in *Gray* v. *Kagan,* 90 R. I. 398, 158 A.2d 572, the commission did not err in giving the petitioner's testimony no weight.

We are constrained to conclude that none of the petitioner's reasons of appeal has merit and his appeal is denied and dismissed. The decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Pearlman & Pearlman,* for petitioner.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* of counsel, for respondent.